**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Elliott Company** | ) | **CASE NO. 1:05 CV 1387** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Liberty Mutual Insurance** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| Company | ) | |
| | ) | |
| Defendant/Third | ) | |
| Party Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| **United Technologies Corporation,** *et al.* | ) | |
| | ) | **Memorandum Opinion and Order** |
| Third Party Defendants. | ) | |

**INTRODUCTION**

Currently before the Court is Defendant/Third Party Plaintiff Liberty Mutual Insurance Company's Motion for Reconsideration Under Rule 59 of the Federal Rules of Civil Procedure or, in the Alternative, to Direct the Entry of a Final Judgment Pursuant to Rule 54(b) or to Amend the January 30, 2007 Order Pursuant to 28 U.S.C. § 1292(b). (Doc. 84). Liberty Mutual Insurance Company ("Liberty") seeks reconsideration of the Court's January 30, 2007 decision that United Technologies Corporation and related companies (collectively "UTC") are not

1

required to indemnify Liberty under certain insurance policies referred to as the "Carrier Policies."  For the following reasons, the Court DENIES the motions.

**DISCUSSION**

Liberty asks the Court to reconsider its January 30 Opinion and Order (the "Order"). "[S]uch motions, if served within ten days of entry of judgment, are considered motions to alter or amend judgments pursuant to . . . Rule 59(e)." *Stubblefield v. Skelton*, unreported, 117 F.3d 1421 (6th Cir. July 10, 1997) (citing *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982)).  "Generally, there are three major situations which justify a court reconsidering one of its orders: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; or 3) to correct a clear error of law or to prevent a manifest injustice."  *Hancor, Inc. v. Inter American Builders Agencies*, 1998 WL 239283 (N.D. Ohio March 19, 1998), *citing In re Continental Holdings, Inc.*, 170 B.R. 919, 939 (Bankr. N.D. Ohio 1994).  Liberty relies on the third basis, that the Court made a clear error of law and its decision has resulted in manifest injustice.

The Court will assume familiarity with the Order, wherein the Court discussed a 1994 Settlement Agreement between the "UTC Companies"[1] and Liberty in some detail.  That Agreement is relevant to this lawsuit because plaintiff the Elliott Company ("Elliott"), a former UTC subsidiary, has sued Liberty seeking coverage under the Carrier Policies.  Liberty claims

---

[1] This was a defined term in the Agreement.  Because the Elliott Company is neither a UTC Company under the Agreement nor within the UTC group that is a third party defendant in this case, the Court may refer to the UTC Companies as UTC, recognizing that any differences in the entities comprising the two groups of entities is not relevant to this motion.

that Paragraph 12 of the Agreement requires UTC to indemnify Liberty as to these claims.  The relevant language of Paragraph 12 states the following:

> [T]he UTC Companies shall defend and indemnify Liberty with respect to any action against Liberty by former subsidiaries of the UTC Companies alleging that Liberty should provide coverage that, absent this Agreement, may be owed to them solely under one or more of the Subject Insurance Policies for Environmental Claims.

(¶ 12).  The Court held that Paragraph 12 did not apply to Elliott's claims under the Carrier Policies, because such coverage was not "coverage that, absent this Agreement, may be owed to [Elliott, the former subsidiary,] solely under one or more of the Subject Insurance Policies for Environmental Claims."

Liberty argues at length that the Court's reading of Paragraph 12 runs afoul of the contract principle that the same words which concern the same subject matter are presumed to have the same meaning.  Liberty points to Paragraph 11 (regarding indemnity in actions by other insurers) of the Agreement, which reads in relevant part as follows:

> The UTC Companies shall defend and indemnify Liberty with respect to any Action . . . by any other insurers of the UTC Companies . . . against Liberty alleging that Liberty should provide coverage that, absent this Agreement, allegedly may be owed to the UTC Companies under the Subject Insurance Policies for Environmental Claims.

(¶ 11).

Liberty notes that both Paragraphs include the same language that Liberty "should provide coverage that, absent this Agreement, . . . may be owed . . . under . . . [one or more of][2]

---

[2] The parties did not discuss the "one or more of" language that is present in Paragraph 12 but not Paragraph 11 in the original motions.  If anything, this language would appear to support the position that the inclusion of the limiting term Subject Insurance Policies does not require the indemnity obligation of Paragraph 12

the Subject Insurance Policies for Environmental Claims." It argues that the Court erred by finding that Paragraphs 11 and 12 had a different scope in light of this identical language. The Court does not disagree that this limited excerpt from the two paragraphs should have and in fact does have the same meaning. The indemnity obligation does not apply under either paragraph unless the underlying claim is for an Environmental Claim under one or more of the Subject Insurance Policies. The problem with Liberty's argument is that it ignores other crucial differences between the two paragraphs that further limit the scope of UTC's indemnity obligation. As the Court previously explained, "when the two provisions are compared side by side it becomes apparent that the 'coverage' that would exist 'absent this Agreement' is with respect to different entities:

> Paragraph 11: The UTC Companies shall defend and indemnify Liberty with respect to any Action . . . by any other insurers of the UTC Companies . . . against Liberty alleging that Liberty should provide *coverage that*, absent this Agreement, *allegedly may be owed to the UTC Companies* under the Subject Insurance Policies for Environmental Claims.
>
> Paragraph 12: [T]he UTC Companies shall defend and indemnify Liberty with respect to any Action against Liberty *by former subsidiaries of the UTC Companies* alleging that Liberty should provide *coverage that*, absent this Agreement, *may be owed to them* under one or more of the Subject Insurance Policies for Environmental Claims."

(Doc. 82) (emphasis in opinion).

The italicized and underlined language from the Court's earlier opinion is the same language Liberty has omitted from its "same meaning rule" analysis. That language has the effect of providing a more limited indemnity obligation under Paragraph 12, since the

---

   to reach all Environmental Claims under all Subject Insurance
   Policies.

4

Agreement had a much greater impact on coverage that may be owed to UTC (the Agreement signatory) as opposed to its former subsidiaries such as Elliott. At the end of the day, Liberty has merely found another way to restate its original argument, rejected by the Court, that the inclusion of the defined term "Subject Insurance Policies" requires that the indemnity obligation reach all Environmental Claim under one of those policies. If the parties had written their contract as Liberty has modified it, the Court might agree. However, the parties chose to insert other limiting language in Paragraphs 11 and 12 which the Court cannot ignore.

Liberty makes a number of other arguments which the Court will address in turn. First, Liberty points out that both parties advocated a position that Paragraphs 11 and 12 had the same scope. It notes that contracts should be construed in a manner that is consistent with the parties' intent. However, the intent of the parties at the time of contracting is determined from the unambiguous language of the contract, not the arguments of the parties' lawyers 13 years after the contract was signed. It is often the case in the adversary process that litigants will advocate far-reaching positions while the answer lies somewhere between. Such is the case here. Liberty advocated that both Paragraphs have an extremely broad scope while UTC sought to narrow both paragraphs. The Court reached a different conclusion based on the unambiguous language of the Agreement.

Liberty also argues that the Court improperly focused on prejudice to other parties in interpreting Paragraphs 11 and 12. It notes that in Paragraph 17 the parties to the Agreement "specifically disavow[ed] any intention to create rights in third parties under or in relation to this Agreement." Liberty claims that the indemnity provisions were intended to protect Liberty Mutual, not third parties to the contract. However, the Court's ruling did not create any rights in

5

third parties. Instead, it recognized that the Agreement potentially prejudiced the rights of third parties and that those third parties might then wish to sue Liberty. The Court's discussion of the reasons why third parties might wish to sue Liberty, and hence the reason the parties might have included indemnity provisions in the Agreement, was not akin to creating right in third parties.

Liberty also faults the Court's interpretation of Paragraph 13, relating to claims by former subsidiaries for "Pollution Claims" (a subset of "Environmental Claims") under "the 1985-86 Policy" (one of the "Subject Insurance Policies"). The Court noted that this obligation would be redundant if Paragraph 12 covered all Environmental Claims under all Subject Insurance Policies. Liberty argues generally that the 1985-86 Policy received separate treatment elsewhere in the Agreement and that the specific reference to Pollution Claims in Paragraph 13 was meant to "subtract from" the expansive coverage it believes was afforded under Paragraph 12. However, the simple fact is that Paragraph 12, as Liberty wishes it to be interpreted, would cover all Environmental Claims under the 1985-86 Policy, rendering Paragraph 13 superfluous.[3] In addition, Paragraph 13 uses language that creates an indemnity obligation. Liberty's "subtraction" argument is without any basis in the text.

Finally, Liberty argues that the Court erred by relying on the cost-sharing provisions of Paragraphs 12 and 14. However, the Court did not rely on those provisions. It merely rejected Liberty's arguments that those provisions supported its interpretation of Paragraph 12.

Accordingly, the Court denies Liberty's motion for reconsideration. Liberty moves in the alternative for the Court to direct the entry of final judgment as to Liberty's indemnification

---

[3] In this regard, it is notable that the 1985-86 policy did not receive separate treatment with respect to indemnity for claims by other insureds under Paragraph 11.

6

claims under Rule 54(b):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b).

Rule 54(b) certification is reserved for the "infrequent harsh cases." *Gen. Acquisition, Inc. v. Gencor, Inc.*, 23 F.3d 1022, 1027 (6th Cir. 1994); *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 62 (6th Cir. 1986).  Rule 54(b) certification involves a two-step inquiry.  First, the Court's decision must dispose "of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gencor*, 23 F.3d at 1027.  The parties do not dispute, and the Court agrees, that this factor is met.  The Order resolved Liberty's indemnity claim against UTC.  The second step for Rule 54(b) certification requires the Court to find that there is no just reason to delay appellate review.  *Id*.  The following nonexhaustive list of factors aids the Court's decision:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Id.* at 1030 (quoting *Corrosioneering, Inc. v. The Continental Ins. Co.*, 807 F.2d 1279, 1283 (6th Cir. 1986); *see also Lowery v. Fed. Express Co.*, 426 F.3d 817, 822 (6th Cir. 2005).

The Court finds that the claims Liberty seeks to appeal are closely related to the claims

that are set for trial on June 5, 2007, less than three months from now. *See Lowery*, 426 F. 3d at 822 (explaining that "the interrelationship of the claims themselves weighs heavily against certification"). Elliott seeks insurance coverage from Liberty for certain asbestos-related claims. Liberty has sued UTC for indemnity should Elliott succeed on its claims. Thus, there is a possibility that the need for review may be mooted by future developments.

In *Corrosioneering*, the Sixth Circuit vacated a district court's 54(b) certification on a similar indemnity/coverage situation:

> [J]uridical concerns counsel against the immediate appeal of a question of indemnity apart from or, at least, prior to the consideration on appeal of the question of whether any liability exists. Although indemnity and liability issues are in some sense "separate and distinct," they are nevertheless "related." Indeed, by its very nature indemnity is collateral to and dependent upon a finding of liability.

*Corrosioneering*, 807 F.2d at 1284.

Moreover, in light of the fast-approaching trial date the "miscellaneous factors" such as delay and expense strongly favor denying Liberty's motion. The only expense Liberty complains of is the "tremendous expense for Liberty Mutual if the Court determines that Liberty Mutual must provide coverage for the underlying claims against Elliott." Not only is this an admission that the upcoming trial may moot the issues Liberty seeks to appeal, but it also demonstrates that Liberty is not facing any present injury. *Id*. Accordingly, the Court denies Liberty's request for Rule 54(b) certification.

The final issue is Liberty's request to certify the case for interlocutory appeal under 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference

of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Review under § 1292(b) should be sparingly granted and then only in exceptional cases." *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993).

The statute breaks down into three requirements: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Liberty's request fails on all three grounds.

First, a controlling question of law must be a legal issue. The parties do not dispute the applicable rules of contract construction under Massachusetts law. Instead, they dispute the meaning of the terms of a particular contract. *See Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.*, 29 F. Supp. 2d 825, 833 (N.D. Ohio 1998) (finding no controlling issue of law where "[i]nstead of raising an issue of controlling law, it appears that the defendants seek interim review of how this Court applied established law to the somewhat novel, factual circumstances of this case."). Second, the fact that the disputed legal issue is the meaning of a unique contract term renders it unlikely there is differing law on the issue. *See White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994) (explaining that "substantial ground for difference of opinion does not exist merely because there is a dearth of cases"). Although the interpretation of this particular contract is, in a sense, an issue of first impression, this does not justify interlocutory review. Otherwise, nearly every contract suit would be subject to interlocutory appeal. *See Moran v. Official Committee of Administrative Claimants*, 2006 WL 3253128, *4 (N.D. Ohio Nov. 8, 2006) ("The standard requires that there be a difference of opinion regarding the law, not

9

just a difference of opinion as to how the law is applied."). Third, the Court has already explained in its discussion of Rule 54(b) that an immediate appeal will not materially advance the ultimate termination of the litigation. *See Memphis*, 293 F.3d at 351 ("When litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation."); *Iron Workers*, 29 F. Supp. 2d at 832 (explaining that the Court should consider the likelihood of a lengthy interlocutory appeal, whether the order is likely to be affirmed, whether continued proceedings might moot the issue, and whether there is a significant burden to continuing).

### **CONCLUSION**

For the foregoing reasons, Liberty's motions are DENIED.

IT IS SO ORDERED.

          /s/ Patricia A. Gaughan
          PATRICIA A. GAUGHAN
          United States District Judge

Dated:  3/30/07